UNITED STATES DISTRICT COURT OF SOUTHERN
DISTRICT OF NEW YORK

_____x

El' Divine Sarkim Allah-El
   Plaintiff,

v.

Allied Universal Security ("Universal Protection Services") &
Columbia University ("The Board of Trustees for Columbia University")
   Defendant.

_____x

**Docket No..:**
**COMPLAINT FOR DAMAGES**

Plaintiff, through his attorney, Adebukola T. Ogunsanya, Esq, files this complaint against Universal Security Services ("AUS") and Columbia University ("Columbia") stating the following:

## <u>REQUEST FOR EQUITABLE TOLLING</u>
## (NON-RECEIPT OF RIGHT TO SUE LETTER)

Plaintiff respectfully requests that this Court apply the doctrine of equitable tolling to preserve the timeliness of this Title VII action due to extraordinary circumstance beyond Plaintiff's control- namely, the non-receipt of the EEOC Right to Sue letters, serious medical hardship, homelessness, and attorney fraud.

### I. BACKGROUND

Plaintiff filed timely charges of religious discrimination with the New York State Division of Human Rights (NYSDHR) in February 2022 against both defendants named herein. Pursuant to the EEOC/NYSDHR Worksharing Agreement under 29 C.F.R. Section 1601.13(a)(4), those charges were automatically dual- filed with the EEOC,

which assumed jurisdiction and issued Right to Sue letters upon closure of the state investigations.

However, Plaintiff never received the EEOCRight to Sue letters and was unaware of their issuance until making a FOIA request in 2025. The EEOC provided the following: a. Charge No 16 G-2022-01963: Right to Sue issued on October 31, 2022, but only disclosed to Plaintiff via email on April 23, 2025 in response to a FOIA request. (**See Pl. Exhibit 1**: Email from EEOC Representative Hernan Morales, dated 4/23/25).

> b. Charge NO. 16G-2022-01543:Right to Sue issued on October 27, 2022, but only disclosed via FOIA on May 20, 205. (**See Pl. Exhibit 2** : Email from Hernan Morales, dated 5/20/25).

Plaintiff had no actual or constructive notice of either Right to Sue letter until those FOIA responses in April and May 2025, respectively.

## II. **PRIOR FEDERAL ACTION & DISMISSAL**

Plaintiff filed a timely complaint in this Court based on the assumption that service of process would issue in due course. However, due to issues surrounding the issuance and receipt of the summons, and without notice of a Right to Sue Letter, Plaintiff failed to serve the complaint properly. The case was dismissed without prejudice at a conference held before Judge Denise Cote. (**See Pl. Exhibit 3**: Transcript of Dismissal Conference and Judge Cote's Order).

## III. BASIS FOR EQUITABLE TOLLING

Federal courts apply equitable tolling sparingly, but recognize its necessity where:

1. The Plaintiff has been pursuing rights diligently, and

2. Extraordinary circumstances prevented timely filing.

(<u>Zerilli-Edelglass v. NYC Transit AUTH.</u>, 333 f. 3d. 74, 80-81 (2d Cir. 2003)).

Here, both prongs are satisfied.

### A. Extraordinary Circumstances Beyond Plaintiff's Control.

1. Lack of Notice from the EEOC: Plaintiff never received either Right to Sue letter until 2025, despite their issuance in 2022.

2. Medical Emergency: Plaintiff was hospitalized with a necrotizing bacterial infection to the scrotum, contracted while working at Columbia University. 3. Homelessness: Plaintiff became homeless after being wrongfully terminated, impairing his ability to receive mail or secure legal counsel.

4. Attorney fraud: Plaintiff was defrauded by a fake attorney retained through the Nologlegal Network later indicted by the Manhattan DA's Office.(See: DA Bragg AnnouncesIndcitment-https://manhattanda.org/d-a-bragg-announces-indictment-against-fake-attorney-for-stealing-200000-from-clients-2/ (2025). This further delayed Plaintiff's ability to understand the status of his EEOC claims.

### B. Diligent Pursuit of Rights

Plaintiff made diligent efforts to pursue this matter:

● Filed timely charges in February 2022;

● Made FOIA requests to determine the status of his EEOC claims;

● Promptly retained counsel once the Right to Sue letters were discovered;
● Immediately filed suit and now seeks equitable tolling to preserve his rights.

C. **Causal Link Between Circumstances and Delay**

There is a direct casually link between the delay in filing and the extraordinary circumstance cited.

● Non-receipt of EEOC letter rendered plaintiff unaware of his right to sue; ●

Plaintiff's illness and housing instability impede access to communication; ●

Legal fraud and misinformation further delayed appropriate legal action.

## IV. LEGAL STANDARD

The 90-day filing deadline under 42 U.S.C & 2000e-5 (f)(1) begins when the claimant receives the EEOC'S Right to Sue Letter. Courts presume receipt within 3-5 days of the mailing unless rebutted. Here, Plaintiff never received the letters at all– a fact confirmed by EEOC emails. "The failure to receive a right to sue letter may justify equitable tolling, especially where the EEOC confirms mailing but the plaintiff can demonstrate non-receipt and prompt action once discovered." Brown v. J. Crew Group, Inc., 2010 WL 3701304 (S.D.N.Y 2010)).

## V. CONCLUSION

Plaintiff has demonstrated:

● Timely initiation of EEOC proceedings;

● Extraordinary and documented hardships;

● Diligent pursuit of legal rights;

● No actual or constructive notice of Right to Sue Letters,

● Prompt filing once EEOC disclosure occurred.

Accordingly, Plaintiff requests that the Court toll the 90 day deadline, and permit the action to proceed as timely filed.

## JURISDICTION AND VENUE

5. This Court has jurisdiction conferred by virtue of 28 U.S.C. 1331, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, et seq."

6. The Court has supplemental jurisdiction over State la claims under 28 U.S.C Section 1367.

7. Venue is proper in this District under 28 U.S.C. section 1391 (b) because the events giving rise to the claims occurred in the judicial district, and both Defendants conduct business within the Southern District of New York.

**PARTIES**

8. Plaintiff, El Divine Starkim Allah-El is a resident of New York, a muslim, a person over the age of 18, and currently employed with the NY portal services.

9. Defendant, Columbia University is a national private ivy league institution located in New York City. Ivy league university that avails itself to the Federal government via federal funding.

10. Defendant Allied Universal Security Services is a national private security contractor.

4. Both defendants avail themselves to federal funding.

11. Columbia avails itself to federal funding through grants, therefore subjecting them to federal non-discrimination requirements including Title VII and Executive Order 11246.

12. Defendant Allied Universal Security Services, as a national security contractor, holds contracts with federal agencies and federally funded institutions, including Columbia University, and is subject to the federal contractor obligations enforced the Office of Federal Contract Compliance Programs (OFCCP).

13. Both Defendants have represented themselves as compliant with federal equal employment and accommodation laws as a condition of receiving and maintaining access to federal funding.

## II. FACTUAL BACKGROUND

A. **Employment History**

14. In <u>Doe v. The Board of Regents of the University of Colorado et al,</u> 100 F. 4th 1251 (10th Cir 2024), a government employer may not punish some employees, but not others , for the same activity, due only to difference in the employee's religious beliefs.

15. Plaintiff was hired by Defendant AUS as a security guard/shuttle driver with responsibilities of picking students up and dropping them off at their respective destinations on the Columbia campus. In his capacity as a mobile patrol officer, Plaintiff had an added responsibility of picking up Columbia University employees from different on campus sites.

16. Plaintiff was employed full time to work 12 hour shifts from November 19, 2019 through June 6, 2021.

17. Throughout his employment from November 19, 2019 through June 6, 2021, Plaintiff had a stellar record with no misconduct, behavioral allegations or complaints from his employment with vendor- AUS and client- Columbia University.

**B. VACCINATION MANDATE AND RELIGIOUS EXEMPTION POLICY.**

18. On or around May 14th, 2021, Defendant- Columbia implemented a vaccination mandate on its employees and staff. On its website, Defendant Columbia University noted that a religious and medical exemption policy was available to its students, staff, employees and

affiliates. In pertinent paragraph, it notes the following:

"To **request   an   exemption for medical or religious reasons**. Check  the box "I am  requesting   a   medical or religious exemption", and you   will be provided additional instructions. Review of exemption applications will take approximately 15 days and will be conducted by a panel of medical experts including a representative from Human Resources. If your exemption is granted, your **My Checklist** section  of the app will have an automatic check mark. If your exemption request is not granted, you will receive notification from us. You will be unable to access campus in the future as you will receive a "red pass" when opening your app." See, [May 27, 2021: Vaccine Mandate](#) [Update for](#) [Faculty,](#) [Researchers and Staff | Columbia University](#) [Irving Medical Center,](#) (last visited January 24, 2025).

19. On or around June 6, 2021, Plaintiff was diagnosed with necrotizing fasciitis(fournier's gangrene) which required emergency debridement surgery at Mount Sinai Morningside.

20. Plaintiff informed his AUS supervisor- Tania Shepherd, of his diagnosis and medical leave. Shepherd advised Plaintiff to apply for FMLA through the third-party administrator, Reed Group, and to keep AUS informed of his recovery status.

21. Plaintiff applied for the open Security Guard position with Columbia University under Requisition No, 510591 on June 9, 2021.

## C. MEDICAL LEAVE AND INTERVIEW PROCESS.

21. In relation to his FMLA leave regarding his ongoing medical condition, Plaintiff had to involve Union representation-32BJ due to the lack of response from AUS in submitting his FMLA paperwork in a timely manner. Union representatives Carol Rothman and Roberto Hernandez intervened on behalf of Plaintiff with AUS in order to obtain short term disability for the Plaintiff with a clearance for return to work on October 15, 2021.

22. On or around July 2021, Columbia/AUS notified its employees and contractors that they must receive at least the 1st dose of the vaccine by the deadline of September 2, 2021.

23. On or around July 28, 2021, Defendant Columbia University sent Plaintiff a CUFO Printed Screening Form for Service Personnel (**Pl. Exhibit 4**). The form was merely an inquiry of any COVID symptoms and provided no medical or religious exemptions nor vaccination policy.

24. On or around July 29, 2021, Plaintiff was contacted by telephone by Jimmy Lai of Columbia University inviting him for a job interview directly with the University. As Plaintiff still recovering from his ongoing injuries, Plaintiff was transparent in informing Columbia's representative about (a) FMLA status; (b) temporary physical limitations and appearance due to his ongoing recovery from surgery; and, (c) his intention to seek a religious exemption or accommodation to Columbia/AUS vaccination policy.

### D. RETALIATION AND TERMINATION.

25. On or around August 5, 2021, Plaintiff presented casually dressed due to the open wound before Columbia University interviewers – Branco Yurisak and Luis Rodriguez.

26. On or around August 5, 2021, at the interview, Plaintiff was told in a hostile and threatening manner that he must be vaccinated to obtain employment within the institution. Thus, Plaintiff responded by requesting written notice/accommodation due to his religious beliefs. At this point, the Columbia representative terminated the interview process and gave feedback asserting Plaintiff was not qualified for the position due to the dress code despite prior knowledge of his ongoing FMLA related injury.

27. On or around September 2, 2021 in retaliation to Plaintiff's direct interview, Defendant AUS terminated Plaintiff prior to the slated return to work as slated on October 15, 2021.

28. On or around November 16, 2021, Plaintiff spoke by telephone with AUS representatives

- Mr. Albert Speaker and James Gates, that he was requesting a religious exemption, and was advised Columbia University does not accept Religious Exemptions, and by virtue, New York State does not allow religious exemption.

## E. EFFORTS TO SEEK EXEMPTION.

28. Plaintiff responded that that information was incorrect and informed the parties that the information on Columbia University website allowed for religious exemptions. Their response was to threaten Plaintiff that he either got vaccinated or not return to work.

29. Plaintiff, a devout Muslim obtained a November 23, 2021 Moorish Science Temple of America Inc, #13, 21-3 "Accommodation for Religious Belief and Vaccine Exemption" Letter to be supplied to his direct employer AUS and by virtue Columbia University**. (Pl. Exhibit 5).** This sect of islam called "The Moorish Science Temple of America" is recognized as a bona fide religion per <u>Johnson v. Bey</u>, 863 F. 2d 13089 (7th Cir 1988).As a member of a class of a bona fide religion, Title VII is applicable to the scope of reasonable accommodation/exemption without creating undue burden to the respective defendants. At minimum, a decision and explanation on the COVID exemption/ accommodation request.

30. <u>EEOC v. Abercrombie & Fitch Stores, Inc.,</u> 575 U.S. 768 (205) establishes that " nn employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment  decisions. Title VII allows failure to accommodate challenges to be brought as disparate treatment claims and gives favored treatment to religious practices, rather than demanding the religious practices be treated no worse than other practices."

31. During the height of the pandemic, an executive Order was instituted by then Mayor De Blasio  on November 23, 2021. The De Blasio Executive Order mandated private sector

employees in New York City be included in the provisions for religious exemptions contrary to the policy effectuated by Columbia and AUS unilaterally predating any federal and state policy. "This provision shall not excuse the employer from the responsibility to provide a reasonable accommodation where required by law." Executive Order No. 296. **(Exhibit 6)**.

32. The Defendants knew or ought to have known, the vaccine mandate did not go into effect for New York City until December 27, 2021 by an Executive Order from Mayor De Blasio. In an attempt to be proactive, Defendant's overstepped boundaries; failed to effectuate clear policy on religious accommodation specific to the COVID-19 virus; and, improperly impeded Plaintiffs constitutionally protected rights.

33. On or around December 27, 2021, Plaintiff received an email from Allied Universal representative Heather Lanza with a subject heading noting "Allied Universal- Vaccine update (response required). In pertinent parts, the email notes:

> "NYC vaccine mandate went into effect, "All Public employees are either required to be vaccinated, have at least one vaccine done or have a reasonable accommodation request on file with their employer. Do not have any information from you that meets these requests. Will not be able to work from now (12/28/21) without it. Text VAX to 949-266-5047 (VAX.AUS.COM) or complete a reasonable accommodation request. One of the three needs to be completed**."**

34. Plaintiff 's request for accommodation/exemption was supplied to AUS and its representative-Ms. Lanza on December 28, 2021.

35. Neither Defendants rendered an outright decision on the accomodation/exemption request submitted by Plaintiff under his rights per Title VII.

36. On or around January 17, 2022, Johnny DeJesus of AUS called Plaintiff to inquire on the status of COVID vaccination. Plaintiff reiterated and maintained his position about

seeking an exemption/accommodation from the mandate before he could return to work especially in light of the NY Supreme Court ruling allowing for religious and medical exemptions. AUS Johnny DeJesus advised he would return to Plaintiff with a response as soon as possible.

37. On or around February 9, 2022, Bonita Mercado of AUS advised Plaintiff that he had to be vaccinated under the Biden mandate. Plaintiff informed Mercado that he had sought an exemption from the vaccination mandate. AUS-Mercado advised that the legal department would be consulted, and a response be forthcoming.

38. On or around February 9, 2022, Plaintiff received a call from Ed Callahan of Allied Universal Regional Human Resources Manager inquiring as to Plaintiff's return to work date. Plaintiff was transparent in explaining his experience in following the protocol and policy of both entities only to be met with hostile treatment for mandating fairness for rights he is entitled to under internal, state and federal rules and yet still be terminated for no just cause. Mr. Callahan stated he would help Plaintiff and get back to him swiftly.

39. On or around February 18, 2022, Mr. John Falco of Allied Universal Regional VP called Plaintiff requesting his return to work status. Plaintiff responded he had not received a response to his request for a religious exemption. Again, Mr. Falco promised he would get back to Plaintiff.

40. On September 9, 2022, AUSl sent a "voluntary exit interview survey" to Plaintiff which was far from the truth on the facts of this case. **Pl.'s Exhibit 7.** Plaintiff was terminated and did not leave voluntarily from AUS and by virtue of his position with Columbia University.

41. For over a year, both Defendants could not provide Plaintiff with a COVID-19 vaccination exemption/accommodation decision whether in light of their internal policy or in compliance with the federal/state mandates.

F. **PRIOR EEOC SETTLEMENT WITH AUS**

42. Defendant AUS had a prior history of religious discrimination in violation of Title VII prior to the COVID outbreak against a guard of the Muslim faith. As part of its resolution with the Federal government institutional reforms including Title VII compliance monitoring, anti-discrimination training, and improved religious accommodation protocols that would be devoid of subjecting job applicants and employees from religious discrimination and retaliation in violation of Title VII and the federal Decree. See, <u>EEOC v. Universal Protection Services, LP,</u> No. 3:17-cv-02436-BEN-NLS.

43.. Despite the Federal decree implemented nationwide to all AUS locations in English and Spanish in 2018 and subject to a yearly audit inclusive a monitor regarding accommodation policies and no retaliation policy, Plaintiff still found himself subject to religious discrimination from AUS and by virtue its client- Columbia University.

44. As part of the resolution of that complaint, Plaintiff AUS was required to retain an equal employment monitor to review and revise its religious accommodation policies to comply with Title VII. Defendant failed to make such reasonable accommodation to Plaintiff under Title VII or use an equal employment monitor in rendering a decision on accommodation/exemption with respect to its internal policy and/or Columbia University's policy.

F. **THE UNITED STATES AND EEOC TITLE VII SETTLEMENT WITH COLUMBIA UNIVERSITY**

45. The United States government has recently acknowledged systemic failures by institutions to respond adequately to complaints of religious discrimination, as evidenced by the June 2025 federal resolution agreement with Columbia University. That agreement—spanning Title VI, Title VII, and Title IX—required Columbia to pay over $200 million, including $21 million earmarked for current and former employees alleging religious discrimination under Title VII.

46. The Columbia resolution further imposed the appointment of a federal monitor to ensure compliance, reporting, and oversight, and was predicated on findings of "deliberate indifference" toward religious-based harassment and failures in accommodation and grievance mechanisms.

47. While the Columbia agreement predates Plaintiff's injury, it serves as compelling evidence that systemic underenforcement or disregard of religious rights within educational and quasi-public institutional settings has been formally recognized by federal civil rights agencies, including the Department of Education Office for Civil Rights, the Department of Health and Human Services Office for Civil Rights, and the Equal Employment Opportunity Commission.

48. Plaintiff's experience is not an anomaly, but part of a broader context of institutional failure to provide meaningful accommodation for religious observance or beliefs—failures that federal agencies have explicitly condemned in other, comparable cases. Plaintiff's assertion of discrimination is thus neither speculative nor isolated, but grounded in an established pattern of administrative neglect, underscoring the need for judicial intervention in this matter.

49. The above public settlements from AUS/Columbia are admissible under the NY and federal rules of evidence as it is referenced in this complaint as prior complaint resulting in settlement as notice of possible or actual constitution violation. See, Calderon v. City of N.Y., 138 F. Supp 3d 393 (W.D.N.Y. 2021). Likewise, its proof of bias and prejudice from AUS and Columbia which negates any contention of undue delay in responding to religious exemption per USCS Fed. Rule Evid R. 408, Greer v. Gates Chili Cent., 577 F. Supp. 3d 147 (W.D.N.Y. 2021).

50. Defendant Columbia University has prided itself on its 99% COVID Compliance rate and its application of the religious or medical exemptions to its students, employees, staff and affiliates in submitting their request on its electronic platform. This is an admirable standard in promoting safety and reducing death rates in NYC. However, in being proactive it failed to give Plaintiff a fair hearing during its interview process despite prior knowledge and proof of a sincerely held belief supported by a religious official. It failed to honor its own preliminary verbal accommodation to Plaintiff regarding its relaxed dress code and its vaccination mandate.

**G. SETTLEMENTS AND VERDICTS ON COVID-19 RELIGIOUS EXEMPTION CASES**

51. **Mercyhealth Settlement (2025):** In *EEOC v. Mercyhealth*, the employer agreed to pay over $1 million in a class settlement after the EEOC found that it discriminated against employees by denying religious accommodations to a COVID-19 vaccine mandate—either terminating employees or withholding pay (through a wage "vaccine incentive charge") rather than properly processing their religious exemption requests. The employer also agreed to reinstate terminated employees and implement systemic policy changes including training and clearer accommodation procedures. This demonstrates that refusing to even consider religious beliefs, or implementing punitive measures instead of providing reasonable accommodations, can lead to substantial liability under Title VII.

52. **Rex Healthcare / Remote Employee Case:** The EEOC sued *Rex Healthcare, Inc.* where an employee, working entirely remotely, had her request for a religious exemption from the COVID vaccine mandate denied—even though she had successfully obtained a religious exemption for a flu vaccine. She provided follow-up explanation of her religious beliefs, but was terminated when it was denied. This case underscores that reasonable accommodation must be considered even for remote employees, and prior religious accommodation for another vaccine may be relevant when evaluating sincerity and accommodation under Title VII.

53. **Mayo Clinic – Religious Bias Claims Reinstated:** In *Ringhofer v. Mayo Clinic Ambulance (8th Cir., May 2024)*, the Court of Appeals reversed a dismissal of claims brought by a group of employees who objected on religious grounds to COVID vaccination or to regular testing in lieu of vaccination. Three employees who were denied vaccination were fired; two who were granted

a religious exemption were terminated for refusing weekly testing. The 8th Circuit held that the district court had erred in dismissing the claims, particularly by requiring uniformity of belief among members of a religion. The decision affirms that employees need not show that all members of their faith bona fide share their belief, and that religious belief can be sincerely held even if not widely shared.

54. **Aspirus, Inc. (7th Circuit, 2024):** In *Aspirus, Inc.*, two employees were terminated for refusing a COVID-19 vaccine. They objected on religious grounds (connected to Christian beliefs about the body, concerns over vaccine safety/derivation). The district court dismissed their complaint. The 7th Circuit reversed and reinstated, holding that a request invoking religious belief does not lose its religious character just because secular concerns are also mentioned. The decision is important for the pleading stage: Plaintiff only needs to plausibly allege that their objection is based "at least in part" on sincerely held religious beliefs.

55. **EEOC v. United Healthcare Services:** The EEOC charged *United Healthcare Services, Inc.* with religious discrimination for refusing a full-time telecommuting employee's exemption request from the COVID vaccine mandate. Although her role did not require physical presence and despite repeated requests for accommodation, her requests were denied and she was terminated. The case highlights that even where job duties do not pose a face-to-face risk, employers must meaningfully engage in the accommodation process.

56. **ASTEC Consent Decree:** In *United States v. Advanced Science & Technology Education Charter Schools (ASTEC)*, a teacher was terminated when the employer required a clergy letter to support the religious exemption request, which the teacher could not provide. The case settled via consent decree. The decree requires that Title VII be complied with and makes clear that

requiring unnecessary documentation (such as a clergy letter) may itself be unlawful when the belief is sincerely held.

57. **Hank's Furniture Settlement (2024):** In *EEOC v. Hank's Furniture (N.D. Fla.)*, the EEOC settled with an Evangelical Christian employee who objected to a COVID-19 vaccine policy. The employer had questioned the sincerity of her belief, or required doctrinal support as a tenet of her religious faith. The settlement prohibits the employer from concluding a belief is insincere simply because it seems inaccurate or unfounded, or from demanding that the belief be an "official tenet" of a religion. The settlement awarded approximately $110,000 in total (back pay + compensatory damages).

58. **Jury Verdict — Lisa Domski (Blue Cross Blue Shield of Michigan)**: In 2024, a Michigan jury awarded over $12 million to Lisa Domski, who claimed she was terminated for refusing to get a COVID-19 vaccine due to her Catholic beliefs. She had worked remotely, her exemption request was denied, and the insurer asserted her religious beliefs were not sincerely held. The jury awarded $10 million in punitive damages, over $1.7 million in lost pay, and $1 million in non-economic damages.

59. **BART Verdict – Bay Area Rapid Transit:** The BART case resulted in a $7.8 million verdict for six employees who were fired or forced into retirement after their religious exemption requests were denied under BART's vaccine mandate. The jury found BART failed to show that accommodating the employees would impose undue hardship. A federal judge later upheld that verdict.

60. Plaintiff asserts that these Defendant's actions constitute unlawful religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C Section 2000 et. seq., by failing to accommodate Plaintiff's sincerely held religious beliefs against receiving a COVID-19 vaccine. Plaintiff's sincerely held religious beliefs against receiving a COVID-19 vaccine. Plaintiff submitted a timely and good faith request for religious exemption, which Defendant denied without demonstrating that granting such as accommodation would have imposed an undue hardship as defined under Title VII.

61. In Groff v. Dejoy, 600 U.S. 447, 143 S. Ct. 2279 (2023), the U.S.Supreme Court expressly held that an employer must show that a request for religious accommodation would result in "substantial increased costs in relation to the conduct of its particular business" to deny such accommodation under Title VII. The prior de minimis standard was rejected. Defendant failed to meet this burden, as no evidence was offered to show any substantial cost or operational disruption from accommodating Plaintiff's religious beliefs.

62. The Second Circuit has likewise recognized that employers must provide reasonable accommodations for sincerely held religious beliefs unless they can demonstrate a real, not speculative, undue hardship. See, Baker v. The Home Depot, 445 F. 3d 541 (2d Cir. 2006). Defendant did not conduct an individualized assessment or interactive process before denying Plaintiff's request or abide by the federal decree in place with AUS, and instead adopted a blanket policy of denying religious exemptions to COVID-19 vaccination.

63. Numerous employers have faced legal consequences for similar conduct. In Doster v. Kendall, 54 F. 4th 398 (6th Cir. 2022), the Sixth Circuit granted class- wide injunctive relief to

military service members whose religious exemption request to COVID-19 vaccines were uniformly denied without individualized review. In the private space, several major employers have entered into confidential or public settlements in Title VII religious exemption cases related to COVID -19 vaccine mandates. For example, in 2023, the EEOC announced a $365,000 settlement in <u>EEOC v. Children's healthcare of Atlanta</u> where a Chrisitan employee was terminated for refusing the COVID-19 vaccine despite a pending religious request.

64. In <u>Horvath v City of New York,</u> SDNY Docket No. 1:22-cv- 09346(2023), the City of New York settled with employees who were denied religious exemptions to the City's vaccine mandates. Settlements and verdicts in these cases have included back pay, reinstatement, compensatory damages, policy changes , confirming that employers who fail to accommodate religious objections to vaccination in accordance with Groff and Title VII are exposed to substantial liability.

65. Defendant's conduct, in both policy and practice, reflects willful and systematic disregard of federal anti- discrimination law. Plaintiff is entitled to all available remedies under Title VII, including compensatory and punitive damages, injunctive relief, back pay, front pay, and attorney fees and costs.

### FIRST CAUSE OF ACTION: TITLE VII RELIGIOUS DISCRIMINATION AS TO COLUMBIA UNIVERSITY AUGUST 2021 INTERVIEW

66. Plaintiff incorporates paragraphs 1 through 65 by reference.

67. Plaintiff is a practicing Muslim and a member of a protected class under Title VII. 58.

68. Plaintiff applied for a direct hire security officer position with Columbia University for which

he was fully qualified based on his prior work experience on the Columbia campus, including years of incident-free employment through Allied Universal.

69. During the application process, Plaintiff informed Columbia of his religious objection to the COVID-19 vaccination and his intention to request a religious exemption, in accordance with Columbia's stated policy.

70. Instead of processing or allowing this request, Columbia interviewers terminated the process, citing Plaintiff's appearance—despite having prior knowledge of his medical limitations due to surgery and FMLA leave.

71. Columbia's stated rationale was a pretext. Plaintiff's appearance had been pre-cleared, and the abrupt termination of the interview followed directly after his request for religious accommodation.

72. Columbia failed to follow its own stated exemption policy and acted with discriminatory intent, treating Plaintiff's religious belief as disqualifying, which constitutes a violation of Title

**SECOND CAUSE OF ACTION: TITLE VII RELIGIOUS DISCRIMINATION AS TO ALLIED UNIVERSAL SERVICES**

73. Plaintiff incorporates paragraphs 1 through 72 by reference.

74. Plaintiff is a devout Muslim, and his religious beliefs include an objection to receiving the COVID-19 vaccine.

75. Plaintiff was employed by Defendant Allied Universal from November 2019 through 2021, with a spotless record and no disciplinary history.

76. Plaintiff notified AUS of his religious exemption request and submitted appropriate

documentation from a recognized religious body.

77. AUS failed to process, respond to, or evaluate Plaintiff's religious exemption request in a timely or meaningful way.

78. This refusal to accommodate, and eventual termination of Plaintiff, constitute adverse actions taken because of Plaintiff's religious beliefs and requests, in violation of Title VII.

**THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION/DECEIT IN EMPLOYMENT PRACTICES.**

79. Plaintiff incorporates all prior paragraphs.

80. Defendants made representation in policies, emails and direct communications that Plaintiff's religious accommodation request would be considered or was permissible, but failed to follow through thereby misleading Plaintiff.

81. Plaintiff reasonably relied on those assurances, incurring loss such as delay in asserting his rights; , delay in asserting rights).

82. The misrepresentations were negligent or willfully misleading, giving rise to compensatory damages.

**FOURTH CAUSE OF ACTION: BREACH OF FEDERAL CONSENT DECREE SIGNED JANUARY 22, 2018 BY AUS.**

83. Plaintiff incorporates all prior paragraphs.

84. AUS is bound by the terms of a federal consent decree in <u>EEOC v. Universal Protection Service LP</u>,3:17-CV-02436-BEN-NLS requiring religious accommodation policies, training and non discriminatory procedures to ensure compliance with Title VII.

85. AUS'S refusal to grant or timely consider Plaintiffs religious exemption, or its blanket denial

practices, constitute violations of the consent decree's binding obligation.

86. This breach demonstrates willful noncompliance and is relevant to liability and remedy.

**FIFTH CAUSE OF ACTION: FAILURE TO ENGAGE IN INTRACTIVE PROCESS (TITLE VII) AGAINST COLUMBIA AND AUS**

87. Plaintiff incorporated all prior paragraphs.

88. Title VII requires employers to engage in a meaningful, good faith interactive process to determine reasonable accommodations.

89 Defendants refused to discuss alternative accommodations, delayed responses, refused individual assessment, and imposed blanket denials, thus violating the interactive process requirement.

90. As a direct and proximate result, Plaintiff was terminated or excluded suffering damages.

**SIXTH CAUSE OF ACTION: RETALIATION UNDER TITLE VII BY ALLIED UNIVERSAL**

91. Plaintiff incorporates prior paragraphs by reference.

92. Plaintiff engaged in protected activity under Title VII by formally requesting a religious exemption to the employer's COVID-19 vaccine mandate.

93. Shortly after asserting this right, Plaintiff was denied re-entry to work, threatened, and ultimately terminated while on approved medical leave with a scheduled return date.

94. The timing and circumstances of these actions—combined with AUS's failure to comply with federal accommodation procedures—establish a strong inference of retaliatory motive, in violation of Title VII.

**SEVENTH CAUSE OF ACTION: INFLICTION OF EMOTIONAL DISTRESS**

95. Plaintiff incorporates prior paragraphs  by reference herein.

96. By virtue of the above stated matters, the Defendant's conduct was unlawful.

97. The Defendants' knew or ought to know, or was reckless or negligent that its actions were apt to cause anxiety, emotional distress, insomnia, humiliation, embarrassment, stigmatization.

98. Defendant's conduct caused Plaintiff to suffer wage loss and damages and to suffer severe emotional distress.

**EIGHTH CAUSE OF ACTION: POST TERMINATION INTERFERENCE/MISREPRESENTATION/RETALIATION.**

99. Plaintiff incorporates all prior paragraphs.

100. After termination, Defendants continued to contact Plaintiff- sending notices about vaccine deadlines, soliciting supplemental documentation, promising to "get back" to him despite having terminated him.

101. Defendant's post- termination conduct amounts to interference with Plaintiff's ability to pursue claims, confusion as to his status, and further retaliation intended to delay, dissuade or mislead.

102. These actions aggravate harm and reflect acknowledgment of liability, and Plaintiff is entitled to damages.

**NINTH CAUSE OF ACTION: DEFAMATION/DISPARAGEMENT/FALSE STATEMENTS (POST-TERMINATION)**

103. Plaintiff incorporates all prior paragraphs.

104. Defendants may have made or caused to be made false statements about Plaintiff's reason

for termination (that he was medically disqualified or unreliable).

105. Such statements harmed Plaintiff's reputation and future employment

prospects. Plaintiff seeks compensatory damages and injunctive relief to correct the

record.

**TENTH CAUSE OF ACTION; VIOLATION OF EXECUTIVE ORDER 11246 AND VIRTUE EXTENSION RELIGIOUS EXEMPTION EXPLANSION EXECUTIVE ORDER 13831 AND OFCCP RULE (2020).**

106. Plaintiff incorporates all prior paragraphs.

107. AUS, as a federal contractor or subcontractor, is subject to obligations under Executive

Order 11246 , 13821 and OFCCP rule and its implementing regulations to avoid religious

discrimination.

108. AUS failure to accommodate Plaintiff's religious beliefs, and its termination, violated those

contractor nondiscrimination obligations and protection of religious liberty in federal

employment contexts and in favor of religious organizations..

109. Any portion of Columbia's operations tied to federal contracts that fall under these rules also

render Columbia liable.

**EIEVENTH CAUSE OF ACTION: DISPARATE TREATMENT OF PLAINTIFF UNDER TITLE VII.**
110. Plaintiff incorporates all prior paragraphs.

111. Defendant's application of its exemption process was inconsistent, arbitrary, capricious and

unfair as alternative accommodations such as masking or periodic testing were rejected despite

being common in similar settings.

112. Upon information and belief, Defendants received multiple religious accommodation requests from employees regarding its COVID-19 vaccination policy. Plaintiff believes that such requests from employees regarding its COVID–19 vaccination policy.

113. Plaintiff believes that such requests were treated inconsistently and that religious requests were disappropriately denied. Plaintiff requires discovery to determine the full extant of this disparate treatment.

114. In <u>Swierkiewicz v. Sorema N.A.,</u> 534 u.s. 506(2002), the Supreme Court held that plaintiffs are not required to plead specific facts establishing a prima facie case under Title VII- just enough to give fair notice of the claim and its grounds.


**TWELFTH COUNT: RELIGIOUS DISCRIMINATION IN VIOLATION OF NEW YORK EXECUTIVE LAW SECTION 296.**

115. Plaintiff  incorporates all prior paragraphs as fully set forth herein.

116. At all relevant times, Plaintiff was an employee within the meaning of New York Executive Law Section 292(6), and Defendant was an employer within the meaning of Section 292(5).

117. Defendant engaged in unlawful discriminatory practices in violation of Executive Law section 296 by failing to reasonably accommodate Plaintiff's sincerely held religious beliefs, by subjecting Plaintiff to disparate treatment on the basis of religious and by terminating Plaintiff's employment (or taking other adverse employment actions) because of Plaintiff's religion and/or refusal to comply with a policy that conflicted with Plaintiff's sincerely held religious beliefs.

118. Defendant was aware of Plaintiff's need for religious accommodation and failed to engage in a good faith interactive process to offer any reasonable accommodation.

119. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered

economic damages, emotional distress, and other compensable harms.

**RELIEF SOUGHT BY PLAINTIFF**

WHEREFORE, Plaintiff demands a judgment as follows:

1. Compensatory damages for lost wages, housing instability, emotional distress, and reputational harm.

2. Back pay and reinstatement or equivalent employment opportunity.

3. Front pay, given the long-term impact on his career and earnings.

4. Reasonable attorney fees and costs as allowed under federal law.

5. Institutional reforms including Title VII compliance monitoring, anti-discrimination training, and improved religious accommodation protocols. *EEOC v. Universal Protection Services, LP*, No. 3:17-cv-02436-BEN-NLS; No federal monitoring was used in this case a deviation from the terms of operation from the federal government.

6. Total monetary compensation in the amount of $12 million, reflecting:

  - $6 million in economic loss (past and future)
  - $4million for emotional distress and reputational harm,
  - $2 million in punitive damages based on willful violation and systemic failure to comply with federal law.

**JURY DEMAND**

   Plaintiff demands a trial by jury.

Dated: September 30, 2025.

Respectfully submitted,

By: */s/ Adebukola Ogunsanya*
ADEBUKOLA OGUNSANYA, ESQ
State Bar No.5679816
343 Fifth Avenue
RiverEdge NJ 07661